DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.J.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-4379

[April 18, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael James Orlando, Judge; L.T. Case No. 16003031 DLA.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

The factors a juvenile court judge can consider in rendering a disposition are challenged in this appeal. In his appeal from an adjudication and commitment to the Department of Juvenile Justice ("DJJ"), the juvenile argues the trial court erred in: (1) permitting a forensic crime lab analyst to testify at the adjudicatory hearing; (2) admitting the analyst's report; and (3) considering the juvenile's subsequent arrests, without adjudication, during the disposition hearing. We affirm on the evidentiary issues, but reverse the disposition and remand the case for a new disposition without consideration of the charges for which there has been no adjudication.

The State charged the juvenile with possession of marijuana under twenty grams, a first degree misdemeanor. The court denied a motion to suppress, and the matter proceeded to an adjudicatory hearing.

When the State sought to introduce testimony from a forensic crime lab analyst, defense counsel objected and requested a *Richardson* hearing. It

argued the State improperly noticed the lab analyst as a BSO Chemist on the witness list, and failed to produce the lab results until the morning of the hearing. As a result, defense counsel asked the court to exclude the lab analyst's testimony and lab report.

The State responded that the BSO chemist was listed as a witness because there is no way of knowing which chemist is actually going to test the substance when discovery is filed. It also claimed the juvenile was not prejudiced because he was on notice he would be receiving lab reports. And, the State could not have provided the report sooner because BSO has a lab policy to not test drugs until shortly before trial.

Defense counsel replied the juvenile was prejudiced because one of his defense theories was that there was no marijuana in the cigarette taken by police. Defense counsel also argued the State's practice of waiting until the last minute to test evidence prejudices all defense attorneys.

The trial court then ruled:

> Okay. So, under the circumstances as presented, by definition because of the way this county operates, I don't find that it's a willful act on behalf of the State although I sympathize with how the process works. I don't believe that the extreme sanction of the exclusion of the evidence nor the prohibition of this witness testifying is warranted under the circumstances presented.
>
> If you feel that you need a recess for a few minutes I'll certainly entertain that. But to exclude it or prevent this witness from testifying, that will be denied; nor did I find any willful act -- any act that rises to the level of a willful act or an intentional act. Okay. So, noted for the record.

The report was admitted over defense objection. The trial court found the juvenile guilty. The trial court held the disposition hearing the following day.

The DJJ prepared a predisposition report ("PDR"), which recommended commitment to a non-secure residential facility. The PDR revealed the juvenile had two open cases. One involved the burglary of an unoccupied dwelling and grand theft. The other case involved robbery, aggravated assault, and petit theft. The PDR also indicated the juvenile was currently being held in secure detention for a separate incident involving an alleged first degree arson and burglary of a dwelling with over $1,000 in damage.

The juvenile was arrested on December 22, 2015, for the burglary charge, on July 2, 2016, in the present case, and subsequently arrested in the robbery case.

Defense counsel argued there was no way to "unring the bell" of negative impressions that arose from the mention of these unfiled cases and the cases in the PDR. Defense counsel argued that without these cases, the juvenile would have been a likely candidate for probation.

The trial court stated it was allowed to consider disposed cases, uncharged crimes, and other matters contained in the PDR. The court then adjudicated the juvenile and committed him to a non-secure residential facility. From the finding of guilt and the disposition, the juvenile now appeals.

We affirm the trial court's decision on the discovery violation without further comment. We write to discuss the trial court's consideration of the juvenile's pending charges in rendering the disposition.

The juvenile argues the trial court improperly took into account the juvenile's arrests without adjudication. The State responds the court was allowed to consider the juvenile's criminal history without limitation in rendering the disposition.

We have de novo review of whether the trial court violated the juvenile's due process rights by considering arrests without conviction during sentencing. *Norvil v. State*, 191 So. 3d 406, 408 (Fla. 2016).

The Florida Supreme Court has set a bright line rule: "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." *Id.* at 410. We applied *Norvil* to a juvenile disposition in *A.R.M. v. State*, 198 So. 3d 1132, 1133 (Fla. 4th DCA 2016).

Here, the State argues *Norvil* should not apply to juveniles and cites to *Barnes v. State*, 227 So. 3d 216 (Fla. 5th DCA 2017). There, the Fifth District held:

> *Barnes* is correct that, under the Criminal Punishment Code, a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense . . . . But *Barnes's* reliance on *Norvil* is misplaced. *Barnes* is a juvenile offender and subject to the new statutes enacted for sentencing juveniles convicted as adults. These statutes allow the trial court to consider the juvenile offender's "youth and

3

its attendant characteristics," including the juvenile's immaturity, lack of judgment, and possibility of rehabilitation in determining whether to impose a life sentence. § 921.1401(2), Fla. Stat. (2014).

*Id.* at 218 (citations omitted).

Here, at the beginning of the disposition hearing, defense counsel requested a postponement to resolve all of the juvenile's cases in a "global resolution." The trial court announced it was going to treat each case separately and individually, stating that if those cases are filed "we can certainly cross that bridge if and when we get to it."

The trial court later asked if either party intended to argue that the PDR was not legally correct. Defense counsel responded it was unfortunate the PDR mentioned two cases that are still pending because those cases have a negative impact on the impression of the juvenile. The juvenile's father then testified it was in his son's best interest to be confined in a facility because his problems had been "building up and getting worse and worse."

The State agreed with the PDR and requested the juvenile be committed to a non-secure residential program. Defense counsel requested a deviation from the PDR, to restore the juvenile to probation.

> THE COURT: [Defense counsel], for better or worse, the juvenile court is a creature of the legislature and whether or not I agree with you, the statute allows for the Department to consider not only cases that are disposed of, they're - - they can consider uncharged crimes, gang affiliations, and the list kind of goes on within 985.
>
> I don't really see any legal basis under these circumstances to either aggravate or go below the recommended disposition that the [DJJ] has given to us to consider. So, now that everyone has had an opportunity to be heard, the Court at this time is prepared to move forward and will follow the recommended disposition for [the juvenile], which is that he be committed -- he'd be adjudicated guilty of the offense; that he be committed to a non-secure residential facility.

The State argues the trial court was referring to section 985.433, Florida Statutes (2016), which provides that the trial court **shall** consider the DJJ's recommendations when determining whether to commit a juvenile, which may include a PDR. The State claims the court is allowed

to view the juvenile's criminal history "without limitation."

Section 985.433(6)(f) provides the trial court may evaluate "[t]he record and previous criminal history of the child, including without limitations" prior adjudications of delinquency, and prior commitments to institutions. The State argues *Norvil* should not apply because a juvenile does not have the full panoply of procedural rights to which an adult accused of a crime is entitled. *P.W.G. v. State*, 702 So. 2d 488, 490 (Fla. 1997).

But, the Florida Supreme Court has held "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." *Norvil*, 191 So. 3d at 410. And we applied *Norvil* to juveniles. *A.R.M.,* 198 So. 3d 1132. We are therefore bound to follow our precedent.

We therefore reverse and remand the case for a new disposition without consideration of charges that have not been adjudicated.

*Reversed and remanded.*

GERBER, C.J., MAY and DAMOORGIAN, JJ., concur.

MAY, J. (specially concurring).

I join the majority because we are bound to reverse based on *Norvil v. State*, 191 So. 3d 406 (Fla. 2016), and *A.R.M. v. State*, 198 So. 3d 1132 (Fla. 4th DCA 2016). But, I question whether *Norvil* should be applied to juvenile delinquency dispositions.

The entire statutory scheme for juvenile delinquency is far different than Florida's Criminal Punishment Code, from title to substance. Delinquency has rehabilitation as its goal while the adult system seeks punishment. And, chapter 985 has sufficient safeguards to insure the juvenile's rights are as protected as the need to fashion a disposition to rehabilitate the juvenile.

As the State rightfully suggests, the DJJ is statutorily required to include the child's criminal history within its PDR. § 985.433. In fact, section 985.433(6)(f)1. requires the court to consider the juvenile's "[p]revious contacts with the department, the former Department of Health and Rehabilitative Services, the Department of Children and Families, the Department of Corrections, **other law enforcement agencies, and courts.**" (Emphasis added).

The reason for that consideration is to curb further delinquent behavior

and rehabilitate the juvenile.  Here, the trial court did exactly what section 985 requires.  It reviewed the totality of the circumstances, including the juvenile's father's testimony, and followed the DJJ's recommendation of commitment.  It did not depart from that recommendation.

Were we not bound by *Norvil* and *A.R.M.*, I would affirm.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

6